```
             IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF TENNESSEE
                        AT KNOXVILLE
_____
                                )
UNITED STATES OF AMERICA,       )
                                )
          Plaintiff,            )
                                )
vs.                             )  Case No.:  3:12-CR-112
                                )
TONY McCLURG,                   )
                                )
          Defendant.            )
_____)
```

**SENTENCING PROCEEDINGS**
**BEFORE THE HONORABLE THOMAS A. VARLAN**

**November 15, 2017**
**3:21 p.m. to 4:07 p.m.**

**APPEARANCES:**

**FOR THE PLAINTIFF:**          KELLY A. NORRIS, ESQUIRE
                                Assistant United States Attorney
                                United States Department of Justice
                                Office of the United States Attorney
                                800 Market Street
                                Suite 211
                                Knoxville, Tennessee 37902


**FOR THE DEFENDANT:**          PAULA R. VOSS, ESQUIRE
                                Federal Defender Services of
                                Eastern Tennessee, Inc.
                                800 South Gay Street
                                Suite 2400
                                Knoxville, Tennessee 37929-9714


**ALSO PRESENT:**               TONY McCLURG, DEFENDANT




(Proceedings recorded by mechanical stenography, transcript
produced by computer-aided transcription.)

**REPORTED BY:**
Rebekah M. Lockwood, RMR, CRR
Official Court Reporter
(865) 210-6698
P.O. Box 1823

1       (Call to Order of the Court)

2              THE COURT:  Thank you.  Good afternoon, everyone.

3       Let's call up the next case, please.

4              THE COURTROOM DEPUTY:  Criminal Action 3:12-CR-11.

5       United States of America versus Tony McClurg.

6              Kelly Norris is here on behalf of the government.  Is

7       the government present and ready to proceed?

8              MS. NORRIS:  Present and ready, Your Honor.

9              THE COURTROOM DEPUTY:  Paula Voss is here on behalf

10      of the defendant.  Is the defendant present and ready to

11      proceed?

12             MS. VOSS:  Yes, he is, Your Honor.

13             THE COURT:  Thank you.  We're here for imposition of

14      judgment and sentence in this case.  Before we ask the

15      defendant to come up to the podium, let me give just a little

16      background.  Hold on just a second.

17             MS. VOSS:  Oh, before we do that.

18             THE COURT:  Before we do that, just going to give a

19      little background for the record.

20             As everyone will recall, on October 31, 2012, this

21      defendant, Mr. McClurg, appeared before this Court and pled

22      guilty to the sole count of the indictment, charging him being

23      a felon in possession of a firearm in violation of 18 U.S.C.

24      Section 922(g)(1) and 924(e).

25             On February 27th, 2013, the Court sentenced the

                    UNITED STATES DISTRICT COURT

1  defendant to a term of 180 months imprisonment, followed by

2  three years of supervised release.  This sentence was based in

3  part on the defendant's designation as an armed career criminal

4  under 18 U.S.C. Section 924(e) and Sentencing Guideline

5  Section 4B1.4.  The Court found at that time that the defendant

6  had three prior violent felony predicate offenses under the

7  Armed Career Criminal Act, specifically three aggravated

8  burglary and theft conditions, all under Tennessee law.

9       On June 18, 2014, the defendant filed a motion to

10  vacate, set aside, or correct his sentence under 18 U.S.C.

11  Section 2255, which he then supplemented after issuance of the

12  United States Supreme Court's decision in Johnson v. United

13  States in 2015.  The court in Johnson held that the residual

14  clause of the Armed Career Criminal Act was unconstitutionally

15  vague.

16       The Court deferred ruling on the defendant's motion

17  until issuance of the Sixth Circuit's en banc decision in

18  United States v. Stitt, S-t-i-t-t, which was decided in 2017.

19  The court -- the Sixth Circuit in Stitt held that a conviction

20  for aggregated burglary under Tennessee law does not qualify as

21  a violent felony predicate offense under the ACCA.

22       Accordingly, the defendant lacks the three predicate

23  offenses required for an armed career criminal enhancement.  In

24  fact, on July 27th, 2017, the parties filed a joint status

25  report in which they agreed that the defendant was entitled to

UNITED STATES DISTRICT COURT

1  relief under Section 2255 in light of Johnson and Stitt, but

2  disagreed as to the appropriate form of relief.  The Court thus

3  entered an order granting the defendant's Section 2255 motion,

4  vacating his sentence, and scheduling this matter for

5  resentencing, which brings us here today.

6          So with that background in mind, if the defendant

7  would please come up to the lectern, along with his counsel,

8  we'll begin by having you sworn in by the courtroom deputy.

9          THE COURTROOM DEPUTY:  Sir, if you'll raise your

10  right hand.

11      (The Defendant Is Sworn.)

12          THE COURTROOM DEPUTY:  Would you please state your

13  name for the record.

14          THE DEFENDANT:  Tony McClurg.

15          THE COURT:  Thank you, Mr. McClurg.  Let me ask you

16  to confirm you're represented here today by Ms. Paula Voss.  Is

17  that correct?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  Ms. Voss, you're here as counsel for this

20  defendant?

21          MS. VOSS:  Yes, your Honor.

22          THE COURT:  As previously stated, Mr. McClurg, on

23  October 31, 2012, you pled guilty to the sole count of the

24  indictment in this case, charging you with being a felon in

25  possession of a firearm in violation of 18 United States Code

UNITED STATES DISTRICT COURT

1     Section 922(g)(1).

2          Do you understand the offense described in Count 1

3 requires a sentence of up to ten years imprisonment, up to

4 three years supervised release, a $250,000 fine, and a $100

5 special assessment.

6          THE DEFENDANT: Yes, sir.

7          THE COURT: All right. The Court understands that

8 the government now agrees that the defendant is not eligible

9 for an armed career criminal enhancement, and, thus, there's no

10 need to ask the defendant to affirm or deny his previous

11 convictions for Tennessee burglary. Is that correct?

12          MS. NORRIS: Your Honor, if I may, for purposes of

13 the record, we are objecting to the absence of an armed career

14 criminal enhancement. We realize this Court is obligated to

15 follow Stitt which prevents that classification. But we

16 contend that Stitt was wrongly decided, so we object to

17 preserve the issue for possible future review.

18          THE COURT: Thank you.

19          Anything further on that point, Ms. Voss?

20          MS. VOSS: Stitt is the law, Your Honor.

21          THE COURT: Well, the Court notes the government's

22 objection, but is not otherwise going to go through the

23 affirmation process that it typically would if it was going to

24 classify someone as an armed career criminal, again, based on

25 Stitt and based on the previously filed status report.

1          MS. VOSS:  And I concur with that, Your Honor.

2          THE COURT:  The Court will proceed in that fashion.

3          So let me ask you, Mr. McClurg, I know you, at the

4     time -- it's been a while, but back in 2013, I asked if you had

5     reviewed and read the presentence report at that time, and you

6     stated you had.  We now have a revised presentence report

7     before us.

8          And have you had the opportunity to read and discuss

9     the revised presentence report in this case with your attorney?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  And Ms. Voss, have you received the

12     revised presentence report and reviewed it with Mr. McClurg?

13          MS. VOSS:  Yes, I have, Your Honor.

14          THE COURT:  And defendant has filed a notice of no

15     objection.  To confirm, does the defendant have any objections

16     to revised presentence report.

17          MS. VOSS:  No objections, Your Honor.

18          THE COURT:  Ms. Norris, have you received the

19     presentence -- the revised presentence report in this case?

20          MS. NORRIS:  Yes, Your Honor.

21          THE COURT:  Does the government have any objection?

22          MS. NORRIS:  Your Honor, as stated, we are objecting

23     to the lack of the armed career criminal enhancement.  Again,

24     based on Stitt, we recognize that the Court must follow the law

25     as it currently is, but we are objecting to preserve the issue

UNITED STATES DISTRICT COURT

1    for appeal, but otherwise there are no objections.

2              THE COURT:  Thank you.  Does government have a motion

3    for third-level acceptance of responsibility pursuant to

4    Sentencing Guideline Section 3E1.1(b).

5              MS. NORRIS:  Yes, Your Honor, the government so

6    moves.

7              THE COURT:  Without objection, that motion will be

8    granted.

9              For purpose of resentencing, the Court has received

10   the defendant's sentencing memorandum, as well as the

11   government's sentencing memorandum and motions for upward

12   variance.

13             Why don't we begin with the government, perhaps, and

14   then if anything further -- well, we'll let -- Mr. McClurg, if

15   you'll have a seat, along with your counsel, we'll let

16   Ms. Norris take the podium and we'll hear from the government.

17             The Court has reviewed all the materials submitted by

18   the parties, obviously, but we'll allow the government to

19   address imposition of sentence as well as the government's

20   motion, and then we'll allow the defendant via counsel to

21   respond.  And then we'll conclude, as we did in the previous

22   sentencing, with the opportunity for Mr. McClurg to allocute or

23   make any statements that you would like to on your behalf.

24             Ms. Norris, go ahead.

25             MS. NORRIS:  Yes, Your Honor.  As the Court noted,

                      UNITED STATES DISTRICT COURT

1    the United States has moved for an upward variance in this

2    case.  The biggest reason to move for the sentence requested,

3    which would be to impose a sentence within the range of 92

4    months to 115 months in this case is based on a fairness

5    argument.

6         And that in 2013, when this defendant was sentenced,

7    at that time, burglary of a dwelling was included in the

8    definition of a crime of violence.  And, therefore, if this

9    defendant had not been deemed and armed career criminal, which

10   he rightly was at the time, the Court would have started his

11   offense level at a offense level 24.

12        The United States notes that since that time, since

13   the time of the guidelines when the defendant was sentenced in

14   2013, the Sentencing Commission has eliminated from the

15   definition of a crime of violence the enumerated offense of

16   burglary of a dwelling and has also eliminated the residual

17   clause, but it's not because it's been deemed unconstitutional.

18        In fact, the United States Supreme Court has held

19   that the Guidelines are and were constitutional as written, and

20   therefore the Court would have rightly found this defendant to

21   start at a base offense level 24, enhanced based on the number

22   of firearms he had, and with the three-level reduction, he

23   would have been at an offense level 23, criminal history

24   category VI, which would have given him a Guidelines range of

25   92 months to 115 months.

UNITED STATES DISTRICT COURT

1          I think the most striking point to be made as to this

2    argument, is that a defendant sentenced at the exact same time

3    as this defendant, who had one less -- one less aggravated

4    burglary conviction would have gotten a sentence within this

5    range.  That defendant -- because this defendant has three

6    aggravated burglary convictions, it only takes two to be given

7    an offense level 24, so a defendant with one less aggravated

8    burglary conviction would be -- would have been given by this

9    Court a sentence within the range of 92 months to 115 months,

10   and that defendant is still sitting in prison right now with

11   that sentence with no recourse.

12          The purposes of 2255 are to put a defendant back in

13   the situation he would have been but for the

14   unconstitutionality, in the case, but for him being found to be

15   an armed career criminal.  That's what this -- what this Court

16   should do, is put him back in that same position.

17          There are cases, Sixth Circuit case, P --

18   Pasquarille, P-a-s-q-u-a-r-i-l-l-e, versus United States.  It's

19   a December 9th, 1997 case that I just recently found that says

20   that's the purpose of 28 U.S.C. Section 2255, to put a

21   defendant in the same position he would have been in.

22          So let's do that in the case, Your Honor.  Let's put

23   this defendant back in the same situation he would have been in

24   in 2013 when he was sentenced for being a felon in possession

25   of a firearm for having three firearms.  He should be an

UNITED STATES DISTRICT COURT

1    offense level 26 reduced by three levels to a 23 and a criminal

2    history category VI.

3          This extreme windfall for this defendant in this case

4    is just not warranted.  This defendant has 25 prior convictions

5    to include three aggravated burglary convictions and two

6    burglary conviction.  His probation has been revoked on

7    numerous occasions.

8          And, Your Honor, this defendant has been involved in

9    the criminal justice system his entire life.  He earned

10   convictions at the age of 21 in 1997, at the age of 24 in 2000,

11   multiple convictions in each of these years.  At the age of 26

12   in 2002, age of 27 in 2003, age 31 in 2007, age 32 in 2008, age

13   34 in 2009, age 34 in 2010, and here he -- the instant matter

14   he committed in 2012.

15         A serious lengthy sentence is warranted for this

16   defendant.  He has shown the Court time and time again he

17   cannot comport with the confines of the law in this country,

18   and, frankly, a hefty sentence is warranted.

19         So therefore, Your Honor, the United States is asking

20   for what it would deem to be an appropriate Guidelines range

21   sentence to fall within a term of 92 months to 115 months.

22         There is an alternative argument the United States

23   would like to make if the Court decides to sentence him to a

24   lesser sentence, and I'm not sure if this is an appropriate

25   time to raise that issue as well.

UNITED STATES DISTRICT COURT

1          THE COURT:  Go ahead.

2          MS. NORRIS:  If the Court does decide that the

3     Sentencing Guidelines as calculated, and rightly it's

4     calculated based on the law in this case, I think it's a term

5     of 30 to 37 months is appropriate, the United States would ask

6     for a time served sentence as opposed to a number term of

7     imprisonment.

8          Your Honor, the -- simply put, the Court should not

9     sentence this defendant to a lesser term of imprisonment than

10    what he's already served, and a time served sentence would -- a

11    sentence other than a time served sentence would cause issue

12    with the Bureau of Prisons and also give him some unjustified

13    possible benefit in the future if he's to violate his

14    supervised release.

15         That time would be credited towards any future

16    supervised release violations, and therefore, he would

17    basically get a get-out-of-jail-free card if he violates his

18    supervision in the future.  That's just not something I don't

19    think the Court wants to basically encourage the defendant to

20    go out and commit more crimes because he wouldn't have any

21    recourse for that.

22         And therefore if the Court deems a sentence within

23    that range or a sentence lesser than what's already served is

24    warranted, the United States is asking for a time served

25    sentence, but certainly is not attempting to belittle its

UNITED STATES DISTRICT COURT

1    request for a range of 92 to 115 months in prison.

2              Thank you.

3              THE COURT:  Thank you, Ms. Norris.

4              Ms. Voss, if you would like to respond to the

5    government's motion or otherwise address sentencing from the

6    defendant's perspective.

7              MS. VOSS:  Thank you, Your Honor.

8              When we first started getting these cases back

9    from -- on the 2255s that were granted following Stitt, there

10   was a lot of talk about which guidelines were going to be

11   applied.  As I understand it now, the government is agreeing

12   and not objecting to the application of the 2016 Guideline to

13   Mr. McClurg's case.  Since I am somewhat concerned that they're

14   going to -- there is going to be appeal if for no other reason

15   than to hold these cases back and see if the government decides

16   to appeal the Stitt case, they still have until a week from

17   Friday, I think, to file a petition for writ of cert with the

18   Supreme Court.  And I believe that they are filing appeals in

19   these, so I just want to make clear to the Court that we did

20   make a legal argument for the use of the 2016 Guidelines.

21   Probation has agreed with us.

22             So rather than repeat everything that's in my

23   sentencing memo, I would just ask the Court to allow to us

24   adopt that argument, should there be any further question in an

25   appellate situation.

UNITED STATES DISTRICT COURT

1          The government keeps talking, Your Honor, about this

2     being remedial and that the purpose of the 2255 is to put a

3     defendant back into the situation they would have been in, and

4     that's not the case.  The 2255 was granted because the sentence

5     he received was unconstitutional.  That's a lot different than

6     just sending someone back on a direct appeal.

7          And that difference has been clearly recognized both

8     in the statutes and in the guidelines.  So he's back here.

9     He's to be sentenced under the Guidelines in effect at the time

10    of resentencing.

11         It's different if you're up on direct appeal.  There

12    is an exception carved out of the statute for cases that are up

13    on direct appeal and remanded for resentencing, yeah, there you

14    go.  You stay back and you get your Guideline that you were

15    under at the time.  But a 2255 situation is completely

16    different, and that's why we're here under the 2016 Guidelines.

17         I disagree with the government that the Guidelines

18    were simply a change based on Johnson.  The commission, when

19    they removed the burglary provision and some other provisions

20    from the definition of crime of violence in the Guidelines were

21    very specific.  It was actually the amendment that became

22    effective on August 1st of 2016.  It deleted burglary of a

23    dwelling from the definition of crime of violence, both in the

24    commentary to 4B1.2(a) and in the note that followed it.

25         The amendment contains a section on reasons for the

UNITED STATES DISTRICT COURT

1    amendment, and it notes that it is the -- quote, result of the

2    commissions' multiyear study, unquote.  This was not a

3    knee-jerk reaction to Johnson.  This isn't a Beckles situation

4    where the Guidelines are not a constitutional issue.

5            This is a change by the commission based on a

6    multiyear study.  It details many of the sources it

7    investigated before making the change.  They had round table

8    discussion, case law, public comment, and, quote, a range of

9    sentencing data.

10           They specifically cited studies by the Bureau of

11   Justice, statistics in the Department of Justice, the FBI, the

12   FBI demonstrates that most burglaries, quote, do not involve

13   physical violence.  The Department of Justice, their uniform

14   crime report in 2014 classified burglary as a property crime

15   rather than a violent crime.

16           This is not a knee-jerk reaction.  They didn't change

17   the definition of crime of violence in 2K2.1 or 4B just because

18   of Johnson.  Johnson may have been the catalyst.  They might

19   have wanted to keep those things consistent.  But that was done

20   in August of 2016 after several years of study.

21           So to say that it shouldn't be applied now is kind of

22   like saying, we should still be sentencing him under the Armed

23   Career Criminal Act.  He's to be sentenced under the Guidelines

24   in effect at this time.

25           The disparity argument honestly is one that sort of

UNITED STATES DISTRICT COURT

1  puzzles me. And I advised the government that I think it's

2  wrong too, but they should go back and change it to the better

3  for those that were sentenced before and didn't have a

4  constitutional issue. But you don't punish Mr. McClurg because

5  the United States Supreme Court deemed that the sentence he

6  received initially was unconstitutional.

7  In a sense, by asking the Court to use the old

8  Guidelines, they are again asking for an illegal sentence,

9  because that's not the way the Court is supposed to resentence

10  him under the statute itself. So I don't quite understand why

11  we're going back to what he might have gotten under an old set

12  of Guidelines had he still been being sentenced under that.

13  On Mr. McClurg's behalf, I think we spelled out

14  pretty clearly to the Court that he did exceptionally well, I

15  think, while he was incarcerated. He has been in federal

16  custody for, I believe it's 67 months at this point.

17  During that time, he got his GED. He took two drug

18  classes. He wasn't put into the RDAP program, but he did take

19  two other drug classes and completed them. I've attached the

20  various certificates that he earned.

21  He worked. He worked steadily. He did plumbing. He

22  got some skills while he was in there. He had a job the whole

23  time he was there.

24  He took classes. He has serious diabetes, Your

25  Honor, what they call brittle diabetes. It cost one of his

UNITED STATES DISTRICT COURT

sisters her life and his other sister also struggles with it.
He took classes to learn how to better control his diabetes
when he gets out, a prison-to-paycheck course.

And something that didn't make it to his report, just
before they brought him back, he completed a parenting program
with them. His son Weston is in the courtroom today. He's
maintained a relationship with him. Weston graduates from
William Blount in May, thinking about going into the Navy. And
Mr. McClurg is concerned about being out and being a good
parent to him for as long as he can be.

He had one disciplinary write-up, Your Honor.
Because of the injuries that we noted to his legs, he was
allowed to wear what's called a soft shoe. One of the officers
there, as I understand it, challenged him about wearing the
wrong shoe, and when he wouldn't change it, that was his
disciplinary write-up. And he did have a medical reason and
medical permission to wear it.

But there's no fights, there's no violence, there's
no drugs, there's no alcohol. There's nothing on his
disciplinary record, other than good things that showed that he
used his time productively.

As far as his previous criminal record goes, Your
Honor, yes, he's had a lot of arrests. As we pointed out, all
of his felonies were those aggravated burglaries that were used
to originally classify him as an armed career criminal. And

UNITED STATES DISTRICT COURT

that was a 60-day splurge that he went on when he was 21. And
when he was arrested after the last one, he confessed all five
of them.

There's no violent crimes. There's no aggravated
assaults other than the fact that he was purchasing these
firearms and possessing them. There's no indication that he's
ever really been arrested for or charged with or convicted of
anything truly violent.

In view of all that, Your Honor, we are asking for a
Guideline sentence of 30 to 37 months. And as I -- I told
Ms. Norris, I was going to ask the Court to give him a
Guideline sentence and not a time-served sentence. Basically,
if you give him a time-served sentence, you're giving him an
upward departure. And I don't think there's anything in his
history, in his behavior since his first sentencing, since his
arrest, actually, or anything else that would require the Court
to go above the Guideline range as it now stands.

So we would ask the Court for a sentence between 30
and 37 months, and hopefully that will get him home. He does
have, as you can see, a lot of support still in the community.
His mother had cataract surgery this morning, and she still
came this afternoon. He has a place to live. He's already
been talking to some friends about getting a job at the
Rubbermaid factory.

So he's looking forward, Your Honor. I think he's

UNITED STATES DISTRICT COURT

served a good time in prison, and hopefully we're not going to
see Mr. McClurg again.

        THE COURT:  Okay.  Thank you, Ms. Voss.

        Ms. Norris, anything further?

        MS. NORRIS:  No, Your Honor.

        THE COURT:  All right.  Finally, Mr. McClurg, the
Court, I believe, has heard from you in the past, but would
welcome the opportunity to hear from you again prior to
sentencing.

        THE DEFENDANT:  Go ahead?

        THE COURT:  Go ahead.

        THE DEFENDANT:  Yes, sir, Your Honor.

        THE COURT:  If you'll just make sure you speak up.

        THE DEFENDANT:  I realized that I've done wrong in
the future.  I'm sorry for that.  And I would love to have the
chance to right my wrongs and be a good person in society.

        THE COURT:  Okay.  Thank you.  Why don't you go ahead
and have a seat, along with Ms. Voss, and we'll proceed forward
with sentencing.

        Again, the Court appreciates defendant's statement,
appreciates the presence of family members and/or friends in
court today, and appreciates the written and oral arguments
that have been made by counsel for the defendant and counsel
for the government in this case.

        In a manner intended to comply with the Sixth

1  Circuit's jurisprudence since the Booker case rendered the

2  Sentencing Guidelines advisory and Gall v. United States'

3  requirement that the Court make an individual assessment based

4  on the facts presented and adequately explain the chosen

5  sentence, the Court will explain its reasons for the sentence

6  to be imposed in this case.

7      Before turning to its analysis of the 3553 factors,

8  the Court first will undertake an analysis of the appropriate

9  advisory Guideline range at this time for this defendant.

10     First, the Court finds that it must apply the current

11 version of the United States Sentencing Guidelines in

12 resentencing the defendant rather than the Guidelines that

13 applied as of his original sentencing in 2009.

14     18 United States Code Section 3553(a)(4)(A)(ii)

15 provides that except when resentencing a defendant on remand

16 following an appeal, a district court must apply the version of

17 the Guidelines in effect on the date the defendant is

18 sentenced.  The latter phrase being a quote from the statute.

19 Also pertinent Sixth Circuit case law, including specifically

20 Ajan, A-j-a-n, v. United States, a Sixth Circuit 2013 case,

21 indicates that a resentencing that results from the grant of a

22 Section 2255 motion always proceeds de novo.

23     The Sixth Circuit in that case made clear that the

24 district court in such a resentencing has discretion to

25 reconsider the appropriateness of the guidelines as they exist

UNITED STATES DISTRICT COURT

1    at the time of the resentencing.

2          Thus, in calculating the defendant's advisory

3    Guideline range, the Court will apply the most recent version

4    of the Guidelines manual, that is the 2016 edition.

5          To that end, the Court has reviewed both the

6    presentence report and state court documentation provided by

7    the defendant in support of his sentencing memorandum.

8    Applying Sections 4A1.1 and 4A1.2, the Court concludes the

9    defendant's total criminal history score is 12, producing a

10   criminal history category of V.  And, furthermore, the parties

11   do not dispute that the base offense level for the defendant's

12   conduct under the current Guidelines is 14.  Two levels would

13   be added for the specific characteristics of possession of

14   three to seven firearms, and then three levels would be

15   subtracted for the defendants of acceptance of responsibility

16   for a total offense level of 13 and as set forth in

17   Paragraph 63 of the presentence report.

18         Based upon this total offense level of 13 and

19   criminal history category of V, the Guideline imprisonment

20   range is 30 months to 37 months.

21         Turning now to the 3553 factors, which the Court has

22   previously considered back in, I think, 2013, at the time of

23   the original sentencing and would also consider today,

24   inclusive of the additional facts brought forth by the

25   defendant in court today.

UNITED STATES DISTRICT COURT

1        And in his sentencing memorandum, the Court first

2   does look to the nature and circumstances of the offense, which

3   has not changed.  The defendant has pled guilty to being a

4   felon in possession of firearms and ammunition.

5        His offense conduct is set forth beginning

6   essentially in Paragraph 10 of the presentence report, which

7   carries forward the factual basis contained in the plea

8   agreement, which discusses the federal search warrant executed

9   at a camper trailer located in defendant's residence in

10  Maryville, Tennessee on August 8th, 2012.

11       The defendant acknowledged possession and existence

12  of a handgun and two long guns inside the camper trailer, and

13  admitted he lived in the camper trailer being searched.  And at

14  that time, a loaded Glock Model 21 .45 caliber pistol, a Sears

15  Roebuck brand 12-gauge Shotgun and a Marlin Glenfield Model 74

16  .22 caliber rifle were all found inside the camper trailer.

17       With respect to the history and characteristics of

18  the defendant, his criminal history has been discussed, and,

19  certainly, the Court is cognizant of that criminal history in

20  the somewhat competing viewpoints or how that criminal history

21  should be viewed, but it is extensive.

22       It began at the age of 21 with the various aggravated

23  burglary charges that have been discussed, which the defendant

24  points out via counsel, much of which incurred over a 60-day

25  period, nonetheless he did have multiple aggravated burglary

UNITED STATES DISTRICT COURT

convictions at the age of 21 in 1997, as well as a burglary

conviction, theft of criminal property convictions, and

following that, moving to the age of 24, various theft, simple

possession convictions, possession of burglary tools, again,

multiple theft convictions, and vehicular-related offenses, and

drug related offenses, all resulting, as the Court previously

discussed, in 12 criminal history points and a criminal history

category of V.

The defendant at this point of resentencing is

currently, I believe, 41 years of age.  Is that correct?

THE DEFENDANT:  Yes, sir.

THE COURT:  He's been previously married -- or he is

married and is the father of one child from a prior

relationship, who is currently a teenager.

The defendant does report some physical health

conditions.  His diabetes, which does require multiple shots,

as well as medication, as well as knee problems and muscle

atrophy from a prior work-related incident.

The defendant reports no history of mental or

emotional health problems.  He states he does not drink alcohol

due to his severe case of diabetes.  He began using marijuana

in his early teenage years and -- as well as prescription

painkillers.

He attended William Blount High School through the

11th grade, and his employment history is somewhat limited,

1  given his past criminal history, as well as certainly his

2  incarceration over the past several years for the instant

3  offense.

4       And also addressing some of the history and

5  characteristics just discussed by the Court, the Court does

6  take recognition of the fact that the defendant graduated from

7  various drug treatment classes while in custody, as well as a

8  parenting program, and did obtain his GED, took classes to

9  learn to control his diabetes, manage his finances, and support

10  himself upon release from custody.  Also it's stated that he

11  has been able -- despite his physical ailments, has been able

12  to and has worked while in prison.

13       With this background in mind, the Court considers the

14  need for the sentence to imposed to reflect various factors,

15  including the seriousness of the offense.  While this offense

16  did not involve a victim, per se, nonetheless the defendant is

17  a previously convicted felon, was not allowed to have -- be in

18  possession of firearms or ammunition.  And despite that

19  prohibition, was in fact in possession of multiple firearms,

20  loaded firearms with ammunition, which could have resulted in

21  serious conduct on this defendant's part and potentially injury

22  to this defendant or, more particularly, to others around him.

23       The Court considers the need to promote respect for

24  the law and provide just punishment.  Again, taking into

25  consideration the seriousness of his offense conduct, also

1  taking into consideration his criminal history.  And, again,

2  the -- the nature and scope and type and age of that criminal

3  history, and the Court further does take into consideration the

4  defendant's acceptance of responsibility for his conduct in

5  this case.

6        The Court considers the need for adequate deterrence,

7  specific to this defendant, the Court would continue to find a

8  need for specific deterrence, again, based on his offense

9  conduct, albeit some years ago now and also his previous

10 criminal history, albeit some years before that.

11       The Court also considers general deterrence, that is

12 fashioning a sentence that would act as a general deterrent to

13 others similarly situated to this defendant who may contemplate

14 the undertaking of similar crimes in the future.

15       And for all the reasons discussed, the Court also

16 takes into consideration the need to protect the public from

17 further crimes of the defendant and to provide the defendant

18 with training, education, and medical treatment, particularly

19 from the standpoint of special conditions of supervised

20 release, which the Court intends to impose.

21       The Court will provide for the defendant to

22 participate in a program of testing and/or treatment for drugs

23 and/or alcohol abuse, given his previous substance abuse

24 history, certainly recognizing the defendant's efforts with

25 respect to drug-abuse classes while incarcerated, but the Court

UNITED STATES DISTRICT COURT

believing such a provision to be warranted in this case.

         And in discussing and recommending continued substance abuse treatment, the Court is not intending to and is not imposing or lengthening the defendant's prison sentence to enable him to complete a treatment program or otherwise promote rehabilitation.

         Turning now to the request the defendant -- excuse me, the government's request for an upward variance, the Court would find it appropriate to distinguish a departure from a variance.

         Departure referring to the imposition of a sentence outside the Guidelines range due to the application of a particular Guidelines provision, whereas a variance refers to the selection of a sentence outside the Guidelines range based upon the Court's weighing of one or more of the sentencing factors of Section 3553(a), the Court recognizing its discretion to depart or vary as it deems appropriate.

         Here, the government seeks an upward variance from the Guidelines range.  The government, among other things, relies on the number and nature of the defendant's prior convictions, as well as the need to promote respect for the law, afford adequate deterrence, protect the public from future crimes of the defendant, and avoid unwarranted sentencing disparities with similarly situated defendants.

         First, with respect to the factors cited by the

UNITED STATES DISTRICT COURT

government in support of a variance, the Court does note a
variance is generally proper. It's proper when particular
facts regarding the defendant or his conduct take the
defendant's case outside the heartland of similar cases the
Guidelines were intended to address.

In this case, after full consideration of the
parties' submissions and arguments, the Court would find that
the factors cited by the government in support of a variance
from a 3553(a) standpoint do not satisfy that standard, i.e.,
do not take this case outside the heartland of cases.

First, as to the nature and number of the defendant's
past convictions, and, certainly, the Court is again cognizant
of that nature and number, the Court notes that many defendants
before this Court, including many charged with being a felon in
possession of a firearm do have criminal records of varying
length, some less than this defendant, some equal to this
defendant, and some more than this defendant.

And, again, certainly, the Court does recognize, as
the government has pointed out, that the defendant has multiple
convictions for aggravated burglary. The Court finds that the
calculation procedures under the Guidelines manual are designed
to account for the number and seriousness of the defendant's
past offenses.

As to the need to promote respect for the law and
provide adequate deterrence and protect the public from future

UNITED STATES DISTRICT COURT

1 crimes, the Court has discussed the relative weight of those
2 3553(a) considerations and incorporates that discussion herein.
3 And, certainly, this defendant's criminal background does
4 suggest the appropriateness of these considerations.

5      The Court, again, is cognizant not only of the newly
6 calculated Guideline range, but of the amount of months already
7 served by this defendant, which is roughly double that advisory
8 Guideline range. And the Court would find that those goals of
9 promoting respect for the law, affording general and specific
10 deterrence, and protecting the public to be adequately taken
11 into consideration of this case.

12      Finally, and this may be as much of -- more of a
13 legal argument than a factual discussion, but regarding the
14 need to avoid unwarranted sentencing disparities, the Court is
15 certainly cognizant, and the Court hopes the defendant is
16 cognizant of the fact that he has benefited from the change in
17 law that the Johnson and Stitt decisions produced.

18      In other words, the defendant's armed career criminal
19 designation enabled him to seek relief under Section 2255, and
20 thus, as the government points out, perhaps, receive a lower
21 sentence than a similarly situated defendant sentenced in 2013
22 not as an armed career criminal would have received.

23      But after full -- again, full consideration, the
24 parties' arguments, the Court does not find that this disparity
25 warrants a variance.

UNITED STATES DISTRICT COURT

1          For these reasons, as the defendant correctly notes

2     in his sentencing memorandum, disparities resulting from

3     Johnson and the subsequent amendments to the Guidelines will

4     continue so long as defendant's sentence pre-Johnson remain

5     incarcerated.  An upward variance in one individual case will

6     not change any system-wide disparity that may result -- that

7     may occur as a result thereof.  Instead, it is a consequence of

8     a change in the Guidelines and the background substantive law.

9          The Court noted -- or as the Supreme Court noted in

10    Kimbrough v. United States in 2007, quoting from that case,

11    some departures from uniformity are a necessary cost of the

12    remedies.  The Supreme Court has adopted -- again, not quoting

13    now -- but such as in Johnson.  Therefore, this factor does not

14    meaningfully distinguish the defendant's case from the

15    heartland of similar cases that come before the Court, which is

16    the guiding principle for the Court.

17         Again, the Court is not overlooking the defendant's

18    somewhat extensive criminal history, the government's position

19    that extreme leniency is not warranted.  On the other hand, the

20    defendant's position that the defendant has already served

21    almost now double the time that served -- has served almost

22    double from what the newly calculated Guidelines range is.

23         So the Court does not find the need to avoid

24    unwarranted sentencing disparities to be a reason to otherwise

25    vary or depart upward in this case.

UNITED STATES DISTRICT COURT

1          So for all these reasons, the Court is going to deny

2     the government's motion for variance and/or upward departure.

3          The Court will however take the arguments presented

4     into consideration in fashioning a sentence sufficient, but not

5     greater than necessary, to comply with the purposes of

6     18 U.S.C. Section 3553.

7          And in light of all the things discussed, including

8     the advisory Guideline range and the relevant 3553 factors, and

9     considering the arguments of the government and the defendant,

10    the Court is going to impose a sentence of time served.  The

11    Court, after some consideration, is going to agree with the

12    government from this standpoint, the Court does not find it

13    necessary or appropriate to impose a Guideline sentence of 30

14    to 37 months.

15         What the Court -- the Court believes, based on the

16    totality of the circumstances in this case, the Court certainly

17    recognizes that time served is above the calculated Guideline

18    range.  However, the Court believes it appropriate to

19    essentially correct defendant's sentence to a sentence of time

20    served and to otherwise impose a sentence in this case of

21    three -- excuse me, of 67 months or -- actually, a sentence of

22    time served.  Because it may -- I know it was somewhere around

23    67 months.  So the Court is going to impose a sentence of time

24    served.

25         For all the reasons discussed, the Court finds this

                    UNITED STATES DISTRICT COURT

1  sentence to be sufficient, but not greater than necessary, to

2  comply with the purposes of 18 U.S.C. Section 3553.  And the

3  Court is, again, going to reduce the defendant's current

4  sentence to time served, given he has already served

5  approximately 67 months in Bureau of Prisons' custody.

6          The Court further finds a term of supervised release

7  of three years to be appropriate in this case, as authorized by

8  the applicable statute and Guidelines and after consideration

9  of the 3553(a) factors.

10          And the Court will impose the special conditions

11  previously discussed of participation in substance abuse,

12  testing, and treatment to be warranted in this case, as

13  reasonably related to the several sentencing factors as

14  involving no greater deprivation of liberty than reasonably

15  necessary for the several sentencing factors and to be

16  consistent with pertinent policy statements issued by the

17  Sentencing Commission.

18          Accordingly and pursuant to the Sentencing Reform Act

19  of 1984, it is the judgment of the Court as to Count 1 of the

20  indictment, that the defendant, Tony McClurg, is hereby

21  committed to the custody of the Bureau of Prisons for a term of

22  imprisonment of time served.

23          Upon release from imprisonment, you shall be placed

24  on supervised release for a term of three years.  Within 72

25  hours of release from the custody of the Bureau of Prisons, you

UNITED STATES DISTRICT COURT

1    shall report in person to the probation office in the district

2    to which you are released.

3            While on supervised release, you shall not commit

4    another federal, state, or local crime, comply with the

5    standard conditions adopted by this Court in Local Rule 83.10

6    and not illegally possess a controlled substance.  You shall

7    not possess firearm, destructive device, or other dangerous

8    weapon.  You shall cooperate in the collection of DNA, as

9    directed by the probation officer, and comply with the special

10   condition related to testing and/or treatment for drugs and/or

11   alcohol abuse, as discussed by the Court.

12           Title 18 U.S.C. Sections 3565(b) and 3583(g) require

13   mandatory revocation of supervised release for possession of a

14   controlled substance or firearm or for refusal to comply with

15   drug testing.

16           Just a moment.

17           Pursuant to Title 18 U.S.C. Section 3013, you shall

18   pay a special assessment fee in the amount of $100, which shall

19   be due immediately.

20           I'm assuming that's already been paid, but --

21           THE DEFENDANT:  Yes, sir.

22           THE COURT:  -- otherwise the Court finds you do not

23   have the ability to pay a fine and will waive the fine in this

24   case.

25           Pursuant to Rule 32 of the Federal Rules of Criminal

UNITED STATES DISTRICT COURT

1 Procedure, the Court advises you may have the right to appeal
2 the sentence imposed in this case. A notice of appeal must be
3 filed within 14 days of entry of judgment. If you request and
4 so desire, the clerk of the court can prepare and file the
5 notice of appeal for you.

6 The Court, again, imposes a sentence of time served.
7 I think it's appropriate to order the defendant to be remanded
8 to custody of the Attorney General for fulfillment of that time
9 served. Or is it to U.S. Marshals?

10 THE PROBATION OFFICER: Well, sir, the Attorney
11 General is more appropriate, because the Bureau of Prisons
12 still has to calculate everything and then designate him out.

13 THE COURT: Okay. All right.

14 MS. VOSS: I'll take him.

15 THE COURT: Quizzical looks perhaps from all of us.
16 Bottom line, Mr. McClurg, you know, your sentence imposed of
17 time served is approximately 67 months is substantially less
18 than what it was originally. And I hope you have -- it looks
19 like you have a supportive family and others awaiting you
20 probably in the very near future.

21 I hope you'll take advantage of the opportunity that
22 the change in law has afforded you and recognize that, you
23 know, if -- if you -- if there are violations, such as
24 possession of a firearm, that that could -- that could lead to
25 violations still within the context of this case while you're

UNITED STATES DISTRICT COURT

1   on supervised release, as well as perhaps future criminal

2   charges, which you obviously hopefully want to avoid.  So just

3   keep all that in mind in light of the sentence imposed here

4   today.

5           So I guess with that having been said, let me ask,

6   does the government -- does the government have any objections

7   to sentence just pronounced that has not previously been

8   raised?

9           MS. NORRIS:  The only objection the government has is

10  to the non-designation of the armed career criminal

11  enhancement, and we're objecting to preserve that issue for

12  possible future review, but otherwise no objections, Your

13  Honor.

14          THE COURT:  Ms. Voss, does the defendant have any

15  objection to the sentence just pronounced that has not

16  previously been raised?

17          MS. VOSS:  I would object to the time served versus

18  the time certain.  And I would also preserve that for possible

19  review.  So that's all, Your Honor.  No other --

20          THE COURT:  Anything further on defendant's behalf?

21          MS. VOSS:  No.  Thank you very much.

22          THE COURT:  Anything further from the government?

23          MS. NORRIS:  No, Your Honor.  Thank you.

24          THE COURT:  Thank you everyone for being here this

25  afternoon, and we'll stand adjourned.

                    UNITED STATES DISTRICT COURT

1          THE DEFENDANT:  Thank you, Your Honor.

2          THE COURTROOM DEPUTY:  All rise.  This honorable

3    court shall stand adjourned.

4        (Proceedings adjourned at 4:07 p.m.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                    UNITED STATES DISTRICT COURT

1    **CERTIFICATE OF REPORTER**

2    STATE OF TENNESSEE

3    COUNTY OF KNOX

4         I, Rebekah M. Lockwood, RMR, CRR, do hereby certify

5    that I was authorized to and did stenographically report the

6    foregoing proceedings; and that the foregoing pages constitute

7    a true and complete computer-aided transcription of my original

8    stenographic notes to the best of my knowledge, skill, and

9    ability.

10        I further certify that I am not a relative, employee,

11   attorney, or counsel of any of the parties, nor am I a relative

12   or employee of any of the parties' attorneys or counsel

13   connected with the action, nor am I financially interested in

14   the action.

15        IN WITNESS WHEREOF, I have hereunto set my hand at

16   Knoxville, Knox County, Tennessee this 16th day of August,

17   2019.

18

19

20

21                              _____
                                REBEKAH M. LOCKWOOD, RMR, CRR
22                              Official Court Reporter
                                United States District Court
23                              Eastern District of Tennessee

24

25