# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| **Plaintiff,** | ) ) ) |
| | ) **Case No. 3:12-cr-112** |
| v. | ) |
| | ) **JUDGE VARLAN** |
| **TONY EDWIN MCCLURG,** | ) ) |
| **Defendant.** | ) |

## MOTION FOR SELF-REPORT DATE AND
## CREDIT FOR TIME ON SUPERVISED RELEASE

Mr. Tony McClurg, though undersigned counsel, hereby request that when issuing the amended judgement in this case the Court (1) give Mr. McClurg a self-report date of no earlier than November 1, 2020, and (2) reduce his Armed Career Criminal Act ("ACCA") sentence by the time he has served on supervised release, running from November 16, 2017 (the date of his release from the Bureau of Prisons ("BOP")[1]) to the date he is ordered to self-report.

Mr. McClurg was originally sentenced on February 27, 2013 under the ACCA to the mandatory minimum of 180 months' incarceration. (Doc. 24.) His only predicates were non-violent Tennessee burglaries and aggravated burglaries. (Presentence Investigation Report (PSR), Doc. 38.) Pursuant to 18 U.S.C. § 2255, *Johnson v. United States*, 135 S. Ct. 2551 (2015) and the Sixth Circuit's en banc holding in *United States v. Stitt*, 860 F.3d 854 (6th Cir. 2017) ("*Stitt I*"), this Court reduced Mr. McClurg's to time-served, with three years of supervised release. (Doc. 42.) He was released by the BOP on November 16, 2017, and has done exceptionally well on supervised release, as indicated by the lack of any modifications or revocations during these two-

---

[1] *See* Bureau of Prison's Inmate Locator, listing Mr. McClurg by his "Register Number," 45173-074 available at https://www.bop.gov/inmateloc/ (last visited June 26, 2020).

1

and-a-half-plus years.  The government had, however, appealed this Court's amended judgment, and on April 29, 2020, the Sixth Circuit, in light of *United States v. Stitt*, 139 S. Ct. 399 (2018) (*Stitt II*), reversed and remanded Mr. McClurg's case, ordering that his ACCA sentence be reinstated.[2]  The mandated issued on June 18, 2020.

I.     **Request for a self-report day no earlier than November 1, 2020.**

Mr. McClurg doesn't have a single incident of violence in his background.  (*See* PSR, generally, Doc. 38.)  He has lived productively in our community since November 16, 2017, and he suffers from what he calls "brittle" diabetes – a severe form that is difficult to regulate.  Given his excellent efforts while on supervised release and his unique susceptibility to COVID-19, both detailed below, he requests the Court provide him a self-report date no earlier than November 1, 2020.  This will allow him to report at a time when—hopefully—COVID-19 is better controlled.  But, it will also allow him to report directly to the BOP facility that he is designated to.  Thus, he will avoid the long and arduous transportation process, and, because undersigned understands that the BOP is not currently accepting new inmates, it will also prevent him from having to stay in local facilities, many of which have active COVIC-19 cases.  For example, the United States Marshals Service has confirmed active cases amongst federal detainees at both Hamilton County Jail in Chattanooga, Tennessee and Bradley County Jail in Cleveland.  It has also confirmed cases in Irwin County Detention Center in Ocilla, Georgia, which is where most individuals from the Eastern District of Tennessee are held while waiting transport to their final facility.

---

[2] After *Stitt II*, Mr. McClurg raised additional arguments as to why his Tennessee burglary and aggravated burglary convictions nonetheless failed to qualify as "generic burglaries" under the ACCA, most notably arguing that the "entry" element is overbroad because it encompasses mere attempted burglaries.  While the Sixth Circuit denied Mr. McClurg's petition for en banc review regarding the "entry" element, the issue remains pending in *United States v. Brown,* --- F.3d ---, 2020 WL 1966845 (April 24, 2020) (No. 18-5356).  Mr. Brown also sought en banc review, and the Sixth Circuit ordered the government to respond.  That petition remains pending.

2

Mr. McClurg presents no danger to the public should he be allowed to remain in the community a little longer. His probation officer reports that he has seen nothing which indicates a return to criminal conduct. And while there was one incident of non-compliance (which was addressed, and of which no additional problems have arisen) he has had a good attitude and always reports as instructed. Moreover, as the thirty-five support letters attached hereto further demonstrate, he has done remarkably well and has successfully reintegrated himself into society. *See* Sealed **Exhibit A** (filed contemporaneously herewith as a sealed document) at 12-54. The letters, which are from family members, employers, and others in the community, tell of his dramatic change that occurred while in federal prison, his efforts at maintaining employment to provide for his girlfriend and her two children, and his remarkable determination to help those in need. As one writer, Ms. Ruth Womak a long-time family friend of Mr. McClurg, explains:

> "[I]f Jails and Prisons were designed to rehabilitate Tony took it seriously and came back with a new outlook on life . . . He knows he can't get back the time he lost but he can start over and with his determination and making the changes and support from family and better choice in friends he is doing great. I believe if he were to have to return into the system that was designed to rehabilitate will prove to be a failure to society."

Ex. A at 10.

In addition to his excellent work on supervised release, Mr. McClurg is at a high risk for serious complications and death should he contract COVID-19, as he suffers from diabetes mellitus with a history of ketoacidosis.[3] *See* Sealed Exhibit at 1-11. The American Diabetes Association explains in its Letter to Detention Centers that "people with diabetes face a significant

---

[3] Diabetic ketoacidosis "is a serious condition that can lead to diabetic coma (passing out for a long time) or even death," and is caused by the dangerous buildup of ketones when one's cells don't get the glucose they need. American Diabetes Association, "DKA (Ketoacidosis) & Ketones" available at https://www.diabetes.org/diabetes/complications/dka-ketoacidosis-ketones (last visited June 8, 2020).

3

and higher-than-average risk of getting *seriously* ill if infected with the COVID-19 virus, up to and including the risk of death."[4] And the Centers For Disease Control and Prevention explains that "[b]ased on preliminary U.S. data, persons with underlying health conditions such as *diabetes mellitus*, chronic lung disease, and cardiovascular disease, appear to be at higher risk for severe COVID-19–associated disease than persons without these conditions."[5]

The American Diabetes Association letter also explains that "[p]eople detained in crowded locked facilities *are* at significantly elevated risk of contracting infectious diseases like COVID-19 because of the close confines in which they live."[6] "Detention facilities frequently lack the health care resources, space, and staffing to care for people who are acutely ill," which is "of heightened concern during these times of a dangerous pandemic."[7] Because of this, the American Diabetes Association calls on officials to "explore all possible strategies to release people with diabetes [such as] furloughs, compassionate release, and pretrial or early release for those most vulnerable to the virus . . . ."[8]

In addition to local facilities, and the Irwin County Detention Center, the Bureau of Prisons reports that it currently has 1,263 federal inmates and 133 staff members with confirmed positive test results for COVID-19.[9] It also has an additional 5,116 inmates and 574 staff who have

---

[4] Available at:
https://www.diabetes.org/sites/default/files/2020-03/COVID-19%20Letter%20to%20Detention%20Centers.pdf (last visited June 8, 2020) at page 2.
[4] Centers for Disease Control, Morbidity and Mortality Weekly Report (April 3, 2020), "Preliminary Estimates of the Prevalence of Selected Underlying Health Conditions Among Patients with Coronavirus Disease 2019 — United States, February 12–March 28, 2020" 69(13);382–386, available at http://dx.doi.org/10.15585/mmwr.mm6913e2 (last visited June 7, 2020) (emphasis added).
[6] *Supra* note 2, at page 2 (emphasis in original).
[7] *Id*.
[8] *Id*.
[9] Bureau of Prisons COVID-19 Update, available at https://www.bop.gov/coronavirus/ (last visited June 26, 2020).

previously tested positive, while **89 inmates** and 1 staff member have died. *Id*. Because Mr. McClurg is at a particularly high risk for serious complications and death should he contract COVID-19, we should refrain from increasing his likelihood of contracting the virus by requiring him to live in close quarters with others in a locked detention facility. This risk is particularly unreasonable given his excellent conduct while on supervised release. At bottom, there is simply no reason to rush this man back to prison, and every reason not to.

He respectfully requests the Court provide him a self-report date no earlier than November 1, 2020.

## II. Request for credit for his time on supervised release, starting November 16, 2020.

Mr. McClurg also asks the Court to give him credit towards his ACCA sentence for the amount of time he has served on supervised release, so that these past two-and-a-half-plus years will not be in vain. He has worked tirelessly to reintegrate himself, and has made monumental strides during this time. But being returned to prison for another approximately 10-years will undoubtedly require a new adjustment period to again reintegrate, through another term of supervised release, when the time comes. If he does not receive credit for this current term of supervised release, it will have the absurd result of lengthening his time under a federal criminal justice sentence. Instead of completing his final supervised release after 15 years of custody; he will complete after 15 years of custody *plus the 2.5 years he has served on supervised release*. Thus, effectively, and unintentionally, punishing him for temporarily winning a § 2255 motion.

Undersigned has confirmed with Counsel for the BOP at Grand Prairie that it cannot give Mr. McClurg credit for this time in the absence of an order from this Court. (*See* E-Mail Exchange,

5

attached hereto as **Exhibit B**.[10])  The e-mail explains that "[i]f the Judge reduces the inmate's term to account for the time the BOP will not award credit, we will implement that sentence.  However, there is no other way for us to credit the inmate for time that he was not in official detention."  Because Mr. McClurg has done exceptionally well while on supervised release, and because he finds himself now facing an additional approximately 10-years of incarceration through no fault of his own, he asks this Court to reduce his ACCA sentence to give him credit for the time he was on supervised release, *i.e.* for the time running from November 16, 2017 to the self-report date ordered by this Court.

      WHEREFORE, Mr. McClurg respectfully requests this Court (1) give him a self-report date no earlier than November 1, 2020, and (2) give him credit towards his ACCA sentence for the time he has served on supervised release.

                                    Respectfully submitted,

                                    FEDERAL DEFENDER SERVICES
                                     OF EASTERN TENNESSEE, INC.

                                  By:  /s/ *Erin P. Rust*
                                       Erin P. Rust
                                  Assistant Federal Defender
                                  835 Georgia Avenue, Suite 600
                                  Chattanooga, Tennessee 37402
                                  (423) 756-4349

---

[10] The attached e-mail is with Theresa Montoya, Assistant General Counsel, Federal Bureau of Prisons, Designation and Sentence Computation Center at Grand Prairie, Texas.  Her e-mail address does not show up in the attached Exhibit B, however it is tmontoya@bop.gov.

## Certificate of Service

I HEREBY CERTIFY that on June 26, 2020, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

/s/ *Erin P. Rust*
Erin P. Rust
Assistant Federal Defender