| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.: 3:12-CR-112-TAV-JEM-1 |
| ) | |
| TONY EDWIN MCCLURG, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's pro se motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) [Docs. 59, 60] as supplemented by defense counsel [Doc. 64]. The United States ("the Government") responded in opposition [Doc. 70], defense counsel filed a reply [Doc. 82] and additional supplements [Docs. 84, 91], and the Government filed a supplemental response in opposition [Doc. 94]. For the reasons that follow, Defendant's motion will be denied.

I. BACKGROUND

In October of 2012, Defendant pleaded guilty to possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1) [Docs. 18, 19]. The Court found that Defendant qualified as an armed career criminal under the Armed Career Criminal Act ("ACCA") based on his 3 prior convictions for Tennessee aggravated burglary and sentenced him to the statutory mandatory minimum term of 15 years' imprisonment [Doc. 24; Presentence Report, ¶¶ 25–27]. *See* 18 U.S.C. § 924(e).

In June of 2017, the Sixth Circuit ruled that Tennessee aggravated burglary did not qualify as a predicate offense for an enhanced sentence under the ACCA. *United States v. Stitt*, 860 F.3d 854, 856 (6th Cir. 2017) (en banc) ("*Stitt I*"). Defendant filed a petition pursuant to 28 U.S.C. § 2255 challenging his armed career criminal classification, which the Court granted [Docs. 34, 35]. On November 16, 2017, the Court resentenced Defendant to time served followed by three years of supervised release [Doc. 42], resulting in Defendant's immediate release from the Bureau of Prisons ("BOP") [*See* Doc. 70-1].

However, the Government appealed the amended judgment [Doc. 45], and in December of 2018, the Supreme Court held that Tennessee aggravated burglary *does* qualify as a predicate for an armed career criminal penalty. *United States v. Stitt*, 139 S. Ct. 399, 408 (2018) ("*Stitt II*"). Accordingly, the Sixth Circuit vacated the amended judgment and instructed this Court to reinstate Defendant's original ACCA-based sentence [Doc. 48, p. 5; Doc. 50].

In July of 2020, the Court reinstated Defendant's original sentence and ordered him to self-report to the BOP no later than November 2, 2020 [Doc. 56, p. 6]. Defendant complied with the Court's order to self-report. He filed a petition for a writ of certiorari with the Supreme Court, challenging his sentence, and his petition was denied in December of 2020 [Docs. 57, 58]. Currently, Defendant is housed at Fort Dix FCI, with a projected release date in May of 2028. *See* Inmate Locator, Bureau of Prisons, https//www.bop.gov.inmateloc/ (last visited October 21, 2022).

Defendant now moves for compassionate release based on his health conditions amid the COVID-19 pandemic, the circumstances of his release and return to prison, and his rehabilitation [Docs. 59, 60; Doc. 64, pp. 3, 8–18]. This matter is now ripe for review.

## II. LEGAL STANDARD

"[O]nce a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013) (quoting *United States v. Curry*, 606 F.3d 323, 326 (6th Cir. 2010)). Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), district courts can modify a term of imprisonment if "extraordinary and compelling reasons" justify a sentence reduction and a reduction is consistent with the relevant factors in 18 U.S.C. § 3553(a). *See also United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020) (holding that "federal judges" have "full discretion to define 'extraordinary and compelling'" without reference to U.S. Sentencing Commission policy statement § 1B1.13). Before seeking compassionate release from the court, a defendant must first "exhaust the BOP's administrative process" or wait "thirty days after the warden has received the compassionate release request—whichever is earlier." *Jones*, 980 at 1105.

## III. ANALYSIS

### A. Exhaustion

Defendant submitted an administrative request for compassionate release to the warden at his prison, citing his health concerns amid the COVID-19 pandemic [Doc. 64-1, pp. 1–3]. He does not appear to have submitted an administrative request based on the

3

circumstances of his release and return to prison and his rehabilitation [*See id.*]. However, the Government has expressly waived enforcement of the exhaustion requirement [Doc. 70, p. 1]. Accordingly, the Court finds that it has authority to consider the merits of Defendant's motion in its entirety. *See United States v. Alam*, 960 F.3d 831, 833–34 (6th Cir. 2020) (recognizing that because the administrative exhaustion requirement operates as a "claim processing rule," it may be waived or forfeited by the Government).

**B.     Merits**

As noted above, Defendant presents three reasons that he believes compassionate release is warranted: his health risk from COVID-19; the reinstatement of his original sentence; and his rehabilitation.

**1.     COVID-19 Risk.**

First, Defendant requests release based on his health conditions amid the COVID-19 pandemic. Defendant suffers from type II diabetes that is "not well controlled," hypertension, and is overweight, as documented in his medical records [*See, e.g.* Doc. 95, pp. 8, 18–20, 76]. The Centers for Disease Control has concluded that diabetes and being overweight "can" increase the risk of serious illness from COVID-19. *See* People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited September 22, 2022). The same is "possibly" true of hypertension. *Id.* Thus, Defendant's medical conditions may place him at increased risk of serious illness from COVID-19.

4

However, Defendant tested positive for COVID-19 in December of 2020 and appears to have recovered without experiencing any serious complications [Doc. 95, pp. 43–44, 77]. While it is possible that Defendant could suffer more severe symptoms from a future infection, Defendant acknowledges that such infections are rare [Doc. 64, p. 12]. Moreover, Defendant is fully vaccinated [Doc. 95, pp. 84, 108–09]. A defendant's "access to the COVID-19 vaccine substantially undermines his request for a sentence reduction" because "with access to the vaccine, an inmate largely faces the same risk from COVID-19 as those who are not incarcerated." *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021). The Court also notes that at this time, COVID-19 appears to be fairly well controlled at Defendant's prison. Fort Dix FCI currently reports zero inmate cases and five staff cases of COVID-19. *COVID-19: Coronavirus*, Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited October 21, 2022).

Defendant's health conditions—particularly his diabetes—are not insignificant. However, given Defendant's vaccination, previous recovery from COVID-19, and the absence of an outbreak at his prison, the Court does not find that Defendant's COVID-19 risk rises to the level of an extraordinary and compelling reason for relief.

    **2. Release and Return to Prison.**

Next, Defendant argues that the unusual circumstances of his release and return to prison are extraordinary and compelling. He points out that in 2017, this Court found a sentence of approximately 67 months to be appropriate [Doc. 64, p. 7]. According to Defendant, "[t]his flip-flop in the law on burglary has had a heartbreaking impact on [his]

5

life" because "[d]espite building strong and healthy relationships, caring for his family, and improving the lives of those around him in his community, he was required to return to prison to serve out the remainder of his 180-month sentence" [*Id.* at 2]. He contends that "[t]his forced return is particularly unfair given that the government did not appeal all sentences that were reduced after Stitt I and before Stitt II" and identifies six such sentences that the Government did not appeal [*Id.* at 8–9].

The circumstances of Defendant's release and return to prison are unusual as when Defendant returned to prison, he inevitably lost what progress he had made reintegrating into the community. However, the Government timely appealed Defendant's amended judgment in December of 2017 [*see* Doc. 45], and therefore Defendant was put on notice that his sentence reduction could be reversed. As the Government has pointed out, its appeal in this case was not an anomaly, as the Government appealed 51 other cases that were reduced after *Stitt I* and before *Stitt II* [Doc. 70, p. 16]. Even if the Court agreed with Defendant that the length of his sentence is unfair, Congress, not the Court, has determined the statutory penalty in this case. Thus, the Court does not find that Defendant's reinstated sentence, in and of itself, warrants a sentence reduction.

### 3. Rehabilitation.

Last, Defendant contends that his rehabilitation supports a sentence reduction. While in custody, Defendant earned his GED, participated in programming, and maintained employment [Doc. 64, pp. 6–8, 20]. In addition, while on supervised release, he did not have any modifications or revocations, although he did have one incident of

6

noncompliance [*Id.* at 7]. According to Defendant, "there is nothing left for society to gain by further incarcerating [him]" [Doc. 64, pp. 5–8].

Rehabilitation "alone" cannot be considered extraordinary and compelling. 28 U.S.C. § 994(t). However, it can be considered in combination with other circumstances. *See, e.g.*, *United States v. Brooker*, 976 F.3d 228, 237–38 (2d Cir. 2020) (district court erred by failing to consider whether Defendant's extensive rehabilitation, combined with other factors, warranted relief under § 3582(c)(1)(A)); *United States v. Adams*, 512 F. Supp. 3d 901, 912–13 (E.D. Mo. 2021) (placing "significant weight" on the defendant's positive prison record and post-sentencing conduct as a factor contributing to extraordinary and compelling reasons for release).

Here, Defendant contends that his rehabilitation combined with his other factors merits relief. In particular, he asserts that his situation is identical to that of the defendant in *United States v. Austin*, 468 F. Supp. 3d 641 (S.D.N.Y. 2020) [Doc. 84, pp. 3-4]. There, the defendant served approximately 11 years of his armed career criminal sentence, obtained release via a § 2255 habeas petition, and two-and-a-half years later, faced a return to prison because his sentence reduction was reversed on appeal. *Id.* at 642–43. Considering Austin's compassionate release motion, the district court found that his rehabilitation was a "significant factor" favoring release. *Id.* at 645. Moreover, "beyond his demonstrated rehabilitation," the court concluded that Austin's unique situation—in which he faced a return to prison after having made significant progress rebuilding his life, including obtaining an affordable housing apartment that he would lose if incarcerated—

7

counseled in favor of a sentence reduction. *Id.* at 645. Ultimately, the Court resentenced Austin to time served, thereby preventing his return to prison. *Id.* at 646.

Defendant's case shares several salient features with *Austin*. Like Austin, Defendant was released pursuant to a successful § 2255 petition, performed well on supervised release and established ties to the community only to face a return to prison when his sentence reduction was reversed on appeal. However, there are at least two meaningful differences between the two cases. As the Government has pointed out, Austin had served a longer period of his sentence than Defendant has served to date. More importantly, Austin was still at liberty when the court decided his compassionate release motion. The knowledge that returning Austin to prison would undermine the progress he had made transitioning into the community, such as having obtained affordable housing, was central to the court's analysis. Here, Defendant returned to prison in November of 2020, nearly two years ago. Hence, Defendant has already undergone the kind of disruption and hardship that the *Austin* court sought to avoid.

Having carefully considered the parties' arguments, the Court does not find that Defendant's rehabilitation combined with the past circumstances of his reinstated sentence meets the extraordinary and compelling standard. *See Lemons*, 15 F.4th at 750 (rehabilitation insufficient for compassionate release where defendant had incurred no disciplinary infractions in prison, was released pursuant to *Stitt I,* completed two years of supervised release, and was returned to prison pursuant to *Stitt II*). Moreover, for reasons

8

discussed above, the Court does not find that Defendant's COVID-19 risk is extraordinary and compelling, with or without factoring in Defendant's rehabilitation.

Because Defendant has not shown extraordinary and compelling reasons for a sentence reduction, the Court will not address the sentencing factors under 18 U.S.C. § 3553(a). *See United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021) (A motion for compassionate release may be denied when one of the substantive requirements is not met.).

## IV. CONCLUSION

Accordingly, Defendant's motion for compassionate release [Docs. 59, 60] is **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan<br>
UNITED STATES DISTRICT JUDGE